Matter of Michelle L. v Steven M. (2024 NY Slip Op 02354)

Matter of Michelle L. v Steven M.

2024 NY Slip Op 02354

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

CV-23-0081
[*1]In the Matter of Michelle L., Appellant,
v
Steven M., Respondent. (Proceeding No. 1.) (And 15 Other Related Proceedings.)
In the Matter of Steven M., Respondent,
v
Michelle L., Appellant. (Proceeding No. 17.) (And Another Related Proceeding.)

Calendar Date:March 29, 2024

Before:Garry, P.J., Clark, Pritzker, Ceresia and Mackey, JJ.

Michelle I. Rosien, Philmont, for appellant.
Andrea J. Mooney, Ithaca, for respondent.
Lisa K. Miller, McGraw, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of Chemung County (Mary M. Tarantelli, J.), entered December 15, 2022, which, among other things, granted petitioner's application, in proceeding No. 17 pursuant to Family Ct Act article 6, to modify a prior order of custody/visitation.
Michelle L. (hereinafter the mother) and Steven M. (hereinafter the father) are the parents of the subject child (born in 2012). In early 2018, authorities received a report that the father had allegedly touched the child inappropriately. An ensuing investigation by the Chemung County Department of Social Services (hereinafter DSS) concluded that the allegations were unfounded due to lack of credibility; the resulting investigation report emphasized the parents' strained relationship. By subsequent August 2018 order, Family Court granted the mother and the father joint legal custody of the child, with each parent alternating care for the child on a weekly basis.
In September 2021, the mother filed a modification petition, alleging that the father had engaged in various concerning behaviors including, among other things, dressing the child in boy's clothing and putting undue pressure upon the mother and the child by enrolling the child in excessive sport activities. The mother later filed a family offense petition alleging that the father had sexually abused the child four days earlier, on February 6, 2022 (see Penal Law §§ 130.52 [2]; 130.60 [2]). Law enforcement investigated the allegations but did not proceed with criminal charges, and Family Court also ordered an investigation (see Family Ct Act § 1034). By February 2022 report, DSS concluded that the allegations were unfounded and, further, noted that the father's home environment posed no safety concerns to the child. Pending resolution of this matter, by March 2, 2022 temporary order, the court directed that visitation with the father be supervised, and separately ordered a forensic evaluation of the mother, the father and the child.
While that evaluation was pending, and following the denial of her request for a protective order, the mother filed another petition in Pennsylvania, where she resides, again seeking a protective order on behalf of the child based upon similar abuse allegations. Following a hearing at which the child testified, the Pennsylvania court dismissed the mother's petition. The father thereafter filed an enforcement petition asserting that the mother had violated the March 2022 temporary order granting him supervised visitation and, later, also petitioned for a modification of custody and visitation citing the mother's alleged attempts at parental alienation.
Following a four-day fact-finding hearing and a Lincoln hearing, Family Court dismissed the mother's petitions and granted the father's modification petition, finding that the mother's repeated and unfounded allegations of sexual abuse, among other conduct, were indicative of her attempts to alienate the child from the father. Based upon [*2]its findings and conclusions, the court awarded the father sole legal and physical custody of the child, with visitation to the mother. The court further found that the mother had willfully violated the March 2022 temporary order and imposed a 15-day suspended jail sentence, provided that the mother comply with the terms of the new order for 12 months. The mother appeals.
"The threshold inquiry in any custody modification proceeding is whether there has been a change in circumstances since entry of the prior custody order that, if established, warrants a review of the issue of custody to ensure the continued best interests of the child" (Matter of Sarah OO. v Charles OO., 198 AD3d 1151, 1152 [3d Dept 2021] [citations omitted]; see Matter of Matthew TT. v Erin TT., 222 AD3d 1242, 1242 [3d Dept 2023]). Upon our review of the record, we agree with Family Court that the requisite change in circumstances had been demonstrated based upon the mother's multiple allegations of sexual abuse and interference with the father's relationship with the child (see Matter of Anthony JJ. v Joanna KK., 182 AD3d 743, 744 [3d Dept 2020]; Matter of Graham v Morrow, 111 AD3d 1178, 1179-1180 [3d Dept 2013]; Matter of Musgrove v Bloom, 19 AD3d 819, 820-821 [3d Dept 2005]). The court thus properly proceeded with a best interests analysis.
"In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Andrea II. v Joseph HH., 203 AD3d 1356, 1357-1358 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; accord Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1155 [3d Dept 2022], lv denied 39 NY3d 901 [2022]). Given Family Court's "superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Zachery VV. v Angela UU., 192 AD3d 1220, 1223 [3d Dept 2021]; see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 753 [3d Dept 2021]).
The record reveals the mother's repeated allegations of sexual abuse against the father over the span of several years. Despite exhaustive investigations by numerous agencies, resulting in the child being subjected to at least seven intrusive examinations in this state and in Pennsylvania, the allegations were consistently unfounded. Although the child testified at the Pennsylvania hearing and had reported to various investigators that the father had inappropriately touched her, her accounts of the incident were markedly inconsistent[*3], and the forensic evaluator in 2022 raised concerns that the child may have been coached or manipulated, and that "parental alienation" appeared to be a factor in the child's behavior, with particular emphasis on the mother's influence. Notably, the prior DSS investigation concerning the 2018 allegations raised similar concerns that the child may have been "coached" by the mother. Relatedly, the mother's testimony regarding medication that had been prescribed to treat the child's physical symptoms in 2022 was wholly unsupported by any documentary evidence related to her purported diagnosis or treatment. Two separate medical examinations of the child following that alleged incident revealed no evidence or concerns of sexual abuse.
Family Court credited the child's teacher, who testified at the hearing, that both parents showed interest in the child's well-being, and that the father was actively engaged in the child's education. She noted that the child seemed to want to see both parents and enjoyed engaging in various outdoor and sports activities with the father. According to the teacher, the child appeared upset that she did not see the father often when visits became supervised and less frequent during the pendency of these proceedings. However, "[w]hen she got to see [the] father more often [the child] was better" and "[m]ore like herself." The teacher further testified that, in early spring 2022, the child "needed a lot of emotional support." As to the sexual abuse allegations, the child purportedly told the teacher that the abuse "must have happened. My mother said it did."
Multiple witnesses testified that the child and the father appeared to enjoy a positive relationship, contradicting the mother's contrary testimony. The individual who supervised the father's visitation with the child testified that the father did not act inappropriately during visits, and that the child was "pretty excited" to the see the father and showed no signs of distress. The child's school resource officer similarly testified that no concerns were noted in his interactions with the child and the parents. Concerns that the father unduly pressured the child to participate in sports or to wear more masculine clothing are unsupported in the record. Similarly, the mother failed to provide evidence to support her allegations that the father was verbally threatening or abusive to the child.
As to the parties' respective home environments, the fact-finding hearing established that the father was gainfully employed, had no other children and maintained a residence where the child had her own bedroom. The father also actively supported the child's interest in extracurricular activities, as well as her engagement in mental health counseling. The mother is unemployed due to disability and is responsible for the care of two additional children. Of concern, the record reflects that the subject child's oldest half sibling had previously exhibited physically violent behavior against [*4]the mother and the child while in the home.
Based upon the foregoing, we find a sound and substantial basis in the record for the award of sole custody to the father, with parenting time to the mother (see Matter of Fowler v Rothman, 198 AD3d 1374, 1375 [4th Dept 2021], lv dismissed 38 NY3d 995 [2022]; Matter of Anthony JJ. v Joanna KK., 182 AD3d at 745-746; Matter of Turner v Turner, 260 AD2d 953, 955 [3d Dept 1999]; Matter of Taber v Taylor, 238 AD2d 696, 697-698 [3d Dept 1997]). Although we are mindful that, in light of the allegations, this was a difficult case, Family Court's findings rest upon the evidence presented. In sum, the record supports the court's conclusion that the mother's repeated unfounded allegations of sexual abuse against the father resulting in the child being subjected to several intrusive examinations over the course of several years, in addition to other evidence of her interference with the father and the child's relationship, demonstrate that she is unfit to act as a custodial parent (see Matter of Williams v Rolf, 144 AD3d 1409, 1413 [3d Dept 2016]; Matter of Taber v Taylor, 238 AD2d at 697-698).
"Although Family Court's determination admittedly was not in accord with the recommendation made by the attorney for the child[ ], the child[ ]'s wishes are informative rather than dispositive — particularly where, as here, the evidence received at the hearing supports the finding that the child [has] been manipulated by one of the parties and the child['s] views regarding their relationship with the other party are the product of that manipulation" (Matter of Gerber v Gerber, 133 AD3d 1133, 1138-1139 [3d Dept 2015] [internal quotation marks, ellipsis, brackets and citations omitted], lv denied 27 NY3d 902 [2016]; see Matter of Virginia C. v Donald C., 114 AD3d 1032, 1036 [3d Dept 2014]). Given the foregoing, and again deferring to Family Court's credibility determinations, we further find that the record also supports the dismissal of the mother's family offense petition given the lack of credible evidence that the father committed the sexual abuse alleged; namely, sexual abuse in the second degree and forcible touching (see Penal Law §§ 130.52 [2]; 130.60 [2]; Matter of Davis v Davis, 221 AD3d 1312, 1313 [3d Dept 2023]; Matter of Zakariah SS. v Tara TT., 143 AD3d 1103, 1104-1106 [3d Dept 2016]; Matter of Miranda UU., 168 AD2d 704, 705 [3d Dept 1990]; Matter of Swift v Swift, 162 AD2d 784, 785-786 [3d Dept 1990]).
Turning to the mother's contention that Family Court erred in holding her in civil contempt based upon her violation of the terms of the temporary supervised visitation order, to sustain such a finding it is necessary to "establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party [willfully] disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Martin v Martin, 163 AD3d 1139, [*5]1141 [3d Dept 2018] [internal quotation marks and citations omitted]; see Judiciary Law § 753; Matter of Wesko v Hollenbeck, 149 AD3d 1175, 1176 [3d Dept 2017]). "This Court will accord deference to Family Court's credibility findings, and the determination of whether to hold a party in contempt will generally not be disturbed absent an abuse of discretion" (Matter of Harley K. v Brittany J., 189 AD3d 1738, 1739 [3d Dept 2020] [citations omitted]; see Matter of Clint Y. v Holly X., 217 AD3d 1069, 1070 [3d Dept 2023]).
Here, the mother admits that she refused to produce the child for the father's scheduled supervised visitation on July 27, 2022, pursuant to the temporary order of visitation. We are unpersuaded by the mother's attempt to justify her defiance of the court order by arguing that her violation was not willful because it was the child who refused visitation. Although "[a] violation of a visitation schedule embodied in a court order may not be willful if it is due to the [subject] child's resistance to visitation" (Matter of James XX. v Tracey YY., 146 AD3d 1036, 1038 [3d Dept 2017]), multiple witnesses testified at the hearing that the child appeared to enjoy and look forward to visitation with the father, and, as previously discussed, the record evidence supports Family Court's conclusion that the mother engaged in a pattern of conduct to alienate the father from the child. Notably, the mother's violation occurred after the investigations of the sexual abuse allegations were deemed unfounded and no safety concerns were noted against the father, and after her attempts to secure an order of protection against the father in this state and in Pennsylvania were unsuccessful. Deferring to Family Court's credibility determinations, we decline to disturb its conclusion that the mother willfully violated the temporary order (see Matter of Harley K. v Brittany J., 189 AD3d at 1740; Matter of Carl KK. v Michelle JJ., 175 AD3d 1627, 1628-1629 [3d Dept 2019]). The mother's related challenge to the court's imposition of a suspended jail sentence is moot, as that portion of the order has expired according to its own terms (see Matter of Peay v Peay, 156 AD3d 1358, 1360 [4th Dept 2017]; Matter of DuBois v Piazza, 107 AD3d 1587, 1588 [4th Dept 2013]).
Finally, we turn to the mother's contention that Family Court exceeded its authority by subpoenaing the school resource officer to testify and the child's DSS, mental health counseling and Pennsylvania court records. Having failed to object thereto, the mother's related arguments are unpreserved for our review (see Matter of Jehrica K. v Erin J., 223 AD3d 1079, 1083 [3d Dept 2024]; Matter of Keaghn Y. [Heaven Z.], 84 AD3d 1478, 1480 [3d Dept 2011]). We nevertheless take this opportunity to remind the court that, "[a]lthough the law will allow a certain degree of judicial intervention in the presentation of evidence, the line is crossed when the judge takes on either the function or appearance of an advocate [*6]at trial" (People v Arnold, 98 NY2d 63, 67 [2002]) and, "[i]n the unusual situation where a trial court does so, the court should explain why, and invite comment from the parties" and "it must strictly avoid assuming the function or appearance of an advocate at trial" (Matter of Jehrica K. v Erin J., 223 AD3d at 1083 [internal quotation marks and citations omitted]). Here, Family Court informed counsel at the August 22, 2022, hearing of her concerns regarding the lack of evidence and testimony offered as to the allegations of sexual abuse. It was more than two weeks later that the court issued the challenged subpoenas, upon notice to the parties. At a subsequent hearing more than one month thereafter, and without objection, the parties were provided copies of the subpoenaed records and an opportunity for review, and were also permitted to question the resource officer who was called to testify (see id.; Matter of Keaghn Y. [Heaven Z.], 84 AD3d at 1479-1480). Under these circumstances, considering the allegations of abuse at issue and paucity of proof proffered in support, we find no error in the court seeking additional information prior to rendering a determination (see generally Family Court Act § 153).
We are further unpersuaded by the mother's similar contention that Family Court improperly questioned her at the hearing, to the extent that said argument is preserved (see Matter of Denise L. v Michael L., 138 AD3d 1172, 1173 [3d Dept 2016]; Matter of Borggreen v Borggreen, 13 AD3d 756, 757 [3d Dept 2004]), as our review of the record reveals that the court appropriately sought clarification when the mother's testimony was at times confusing or disjointed (see Matter of Denise L. v Michael L., 138 AD3d at 1173-1174; Matter of Fountain v Fountain, 130 AD3d 1107, 1108 [3d Dept 2015]). Moreover, the record belies the related argument made by the mother and the attorney for the child that they were not given notice of the court's order directing a forensic evaluation. Although the resulting report was belatedly admitted into evidence, the court offered the parties an opportunity to appear at a later date "to be heard on [any] objection," and no objection was made.
Although we are affirming the determination, we once again advise — as we have repeatedly advised — that it is inappropriate to share or divulge the contents of a Lincoln hearing (see e.g. Matter of John M. v Tashina N., 218 AD3d 935, 938 [3d Dept 2023]; Matter of Brett J. v Julie K., 209 AD3d 1141, 1142 n 2 [3d Dept 2022]; Matter of Cramer v Cramer, 163 AD3d 1077, 1081 n 6 [3d Dept 2018]). Similarly, in light of the highly sensitive nature of Family Ct Act § 1034 investigations, Family Court should not have quoted the contents of the resulting investigative report in its order; we urge the court to provide heightened attention to preserving confidentiality and privacy to the extent possible. It is unnecessary to set forth extensive details within the written determination, as the information [*7]under review is made available within the record on appeal.
The mother's remaining contentions, to the extent not expressly addressed herein, are either unpreserved or have been found to be lacking in merit.
Clark, Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.